UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————
No 08-CV-0493 (JFB)
———————————————

ORILEY GRAYSON,

Petitioner,

VERSUS

DALE ARTUS, SUPERINTENDENT,
CLINTON CORRECTIONAL FACILITY

Respondent.

———————————————
MEMORANDUM AND ORDER
February 1, 2010
———————————————

JOSEPH F. BIANCO, District Judge:

Oriley Grayson (hereinafter "Grayson" or "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on October 4, 2004 in the County Court of the State of New York, County of Nassau (the "trial court"), for Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), Burglary in the Second Degree (N.Y. Penal Law § 140.25[2]), two counts of Eavesdropping (N.Y. Penal Law § 250.05), and three counts of Possession of Eavesdropping Devices (N.Y. Penal Law § 250.10).

Petitioner was sentenced to consecutive terms of imprisonment of twenty-five years to life for murder and five years for burglary, to be followed by five years of post-release supervision. Petitioner was also sentenced to concurrent terms of one-and-one-third to four years for eavesdropping and a one year definite term for possession of eavesdropping devices.

Petitioner challenges his conviction on the following grounds: (1) the trial court erred in finding probable cause for his arrest and that evidence obtained as a result of his arrest should have been suppressed;[1] (2) the evidence presented by the prosecution was insufficient as a matter of law to sustain petitioner's convictions; (3) petitioner was

---

[1] Petitioner raises this claim as two separate grounds: (1) that the police lacked probable cause to arrest him for murder, and (2) that the police lacked probable cause to arrest him for burglary and eavesdropping.

denied a fair trial when the court allowed improper testimony showing his propensity for violence; and (4) various summation comments by the prosecutor deprived petitioner of a fair trial.

For the reasons set forth below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

A. The Evidence at Trial

The Court has adduced the facts below from the instant petition and the state court record in this case.

On October 12, 2003, Grayson intruded into his ex-girlfriend Catherine Harvey's ("Catherine") house in Nassau County and eavesdropped on Catherine's private telephone call, via a handset plugged into a telephone jack in the boiler room. (Trial Tr. at 715-86.) Catherine testified that this was not the first time Grayson eavesdropped on her. (*Id.* at 238.) She testified that, during the time that her ten-year relationship with Grayson was deteriorating, Grayson wire-tapped her car, hid under her bed, and told her that he had a gun. (*Id.* at 237-40.) Following such incidents, Catherine testified that she changed the locks in her apartment. (*Id.* at 242.)

Catherine's brother, Merrick Harvey ("Merrick"), who was also Catherine's co-tenant, caught Grayson eavesdropping in the boiler room of the apartment on October 12. (*Id.* at 726-27.) After hearing from Merrick about the intrusion, Catherine called Grayson and told him that she was going to seek an order of protection against him. (*Id.* at 265.) Grayson cursed and hung up on her. (*Id.* at 263-65.)

On October 13 at approximately 1:55 a.m., Catherine awoke to a popping sound in the apartment. (*Id.* at 267.) After she awoke, she heard footsteps going up the stairs. (*Id.*) After hearing footsteps, Catherine ran into her living room and saw Merrick dead on the couch with his mouth open and blood pouring down his face from a bullet wound. (*Id.* at 268.) She did not see who murdered Merrick. (*Id.* at 269.) She dialed 911, and the police arrived shortly thereafter. (*Id.* at 268.) Catherine also called Grayson's sister, Janet Grayson ("Janet"), and notified her about the murder. Janet called Grayson at around 2:15 a.m. to notify him about the murder.

Approximately six hours after Merrick's murder, Grayson was arrested for burglary and eavesdropping. (Hearing Tr. at 14.) Nassau County Detective John McHugh ("McHugh") testified that Grayson waived his constitutional rights and agreed to give a statement. Grayson admitted in the statement that he eavesdropped on Catherine's private phone call on October 12. Grayson also stated that, at approximately 11:30 p.m. that night, he left Catherine's and Merrick's apartment and spent the rest of the night at his girlfriend Michelle Murray's house in Queens. (Trial Tr. at 715-86.) Grayson then called Catherine from Murray's house at approximately 2:30 a.m. and inquired about the murder.

Shortly after Grayson was arrested, the Nassau County police obtained a copy of Grayson's cell phone records. These records showed that at 12:37 a.m., 12:40 a.m., and 1:32 a.m., petitioner placed or received calls within the vicinity of the murder site. (*Id.* at 599-607.) In addition, at 2:12 a.m., Grayson placed a phone call from a location

2

somewhere between the murder site and Murray's house. (*Id.* at 606-07.)

In addition to obtaining cell phone records, the police also testified that they removed the steering wheel cover from petitioner's car, and the cover tested strongly for gunpowder residue. (*Id.* at 424, 436, 546-50.) The police stated that gunpowder residue can be transferred from one object to another and does not remain on an object for very long. (*Id.* at 441-43.) Nassau County detective Sergeant Robert Nemeth testified that the bullet that killed Merrick Harvey had been fired from a .38 caliber revolver, which would cause gunpowder residue to land on the user's hand. (*Id.* at 688-89, 703-05.)

C. Procedural History

1. The Suppression Hearing

Prior to the trial, Grayson claimed that he was unlawfully arrested and moved for the suppression of the evidence and statements obtained from the allegedly unlawful arrest. The Supreme Court, Nassau County conducted a hearing to determine whether Grayson was arrested pursuant to probable cause, and whether the statements petitioner made to police and various items of physical evidence would be admissible at trial. Following the hearing, in a written decision dated May 4, 2004, the Supreme Court denied Grayson's suppression motion and found that the police had probable cause to arrest Grayson for murder. *People v. Grayson*, Ind. No. 268N/03, at 7 (Supreme Court, Nassau County, May 4, 2004). The prosecution then moved that the court make additional findings of fact and conclusions of law and determine whether the evidence was sufficient to establish probable cause for Grayson's arrest for eavesdropping and burglary. The Supreme Court subsequently ruled that there was also probable cause to arrest Grayson for burglary and eavesdropping. *People v. Grayson*, Ind. No. 2683N/03, Mot. Calendar Nos. C-245, C-241 (Supreme Court, Nassau County, July 21, 2004) ("Implicit in [the May 4, 2004 decision] is the further conclusion that the detective had probable cause to believe that defendant committed the crimes of burglary and eavesdropping (for which he was indicted).").

2. Conviction and Direct Appeal

On October 4, 2004, a jury found Grayson guilty of one count of murder in the second degree (N.Y. Penal Law § 125.25[1]), one count of burglary in the second degree (N.Y. Penal Law § 140.25[2]), two counts of eavesdropping (N.Y. Penal Law § 250.05), and three counts of possession of eavesdropping devices (N.Y. Penal Law § 250.10). On November 8, 2004, Grayson was sentenced to the following terms of incarceration: (1) consecutive terms of imprisonment of twenty-five years to life for the murder conviction, five years for burglary, and five years of post-release supervision; and (2) concurrent terms of one-and-one-third to four years for each eavesdropping conviction and one year for each possession of eavesdropping devices conviction.

Grayson appealed his conviction to the Appellate Division on the following grounds: (1) the trial court erred in finding probable cause for his arrest for murder and that evidence obtained as a result of his arrest should have been suppressed; (2) the trial court erred in finding probable cause for his arrest for burglary and eavesdropping and that evidence obtained as a result of his arrest should have been suppressed; (3) the circumstantial evidence presented by the prosecution was insufficient as a matter of law

3

to sustain his homicide conviction; (4) petitioner was denied a fair trial when the court allowed improper testimony showing his propensity for violence; and (5) prosecutorial misconduct during summation deprived petitioner of a fair trial. The Appellate Division affirmed the conviction on December 26, 2006. *People v. Grayson*, 35 A.D.3d 881, 882 (N.Y. App. Div. 2006).

Grayson then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's order on all grounds. On March 27, 2007, the Court of Appeals denied Grayson leave to appeal. *People v. Grayson*, 866 N.E.2d 459 (N.Y. 2007).

### 3. The Instant Petition

On February 1, 2008, Grayson petitioned this Court *pro se* for a writ of habeas corpus. By letter dated February 22, 2008, petitioner requested that the Court hold the petition in abeyance pending exhaustion of ineffective assistance of counsel claims in state court relating to petitioner's challenge to the sufficiency of the evidence. By Order dated February 29, 2008, the Court initially denied petitioner's request. However, by letter dated May 5, 2008, petitioner requested discovery in this action and again requested a stay of proceedings in this action pending exhaustion of petitioner's claims in state court relating to a plea offer and the facial validity of the indictment. At a telephone conference on October 17, 2008, the Court denied petitioner's request for discovery and granted petitioner's request for a stay. By letter dated October 14, 2009, respondent requested that the stay be vacated and provided the Court with a copy of an order from the New York Supreme Court, Appellate Division, Second Department denying petitioner leave to appeal the denial of his post-conviction motion. By Order dated October 16, 2009, the Court granted the motion to vacate the stay and directed petitioner to file an amended petition. Petitioner filed an amended petition on December 30, 2009,[2] which asserted four claims: (1) the trial court erred in finding that there was probable cause to arrest petitioner for murder and in failing to suppress the evidence flowing from the arrest; (2) the trial court erred in finding that there was probable cause to arrest petitioner for burglary and eavesdropping and in failing to suppress the evidence flowing from the arrest; (3) the trial court erred in allowing into evidence prior uncharged crimes and bad acts; and (4) petitioner was deprived of a fair trial by the prosecutor's comments during summation.[3] In the amended petition, petitioner did not raise either of the new grounds he had pursued in state court. By letter dated January 13, 2010, respondent informed the Court that it would rely on its originally filed opposition to the petition. This matter is fully submitted.

### II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides, in relevant part:

---

[2] The amended petition was filed on behalf of petitioner by counsel.

[3] Petitioner's sufficiency of the evidence claim is not mentioned in the amended petition, though there is passing reference to it in the brief in support of the amended petition. In an abundance of caution, the Court will also consider petitioner's sufficiency of the evidence claim as raised in petitioner's initial petition.

4

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

In particular, AEDPA establishes a deferential standard of review: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

III. DISCUSSION

A. Procedural Bar to Portion of Improper Summation Claim

As a threshold matter, respondent argues that petitioner's claim alleging that various comments made by the prosecutor during summation deprived him of a fair trial is largely procedurally barred from habeas review. Specifically, respondent contends that, except for the comment about the petitioner being "capable of anything," the other portions of the improper summation claim are procedurally barred. The Court agrees.

The Supreme Court has held that claims underlying a habeas petition may be

5

procedurally barred from review if they were decided by the state courts on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

In particular, the procedural bar applies when a state court's decision contains a "plain statement" that it is relying on an appropriate state law to deny a claim. *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). The Supreme Court has consistently applied the *Long* rule since it was established. *See Harris v. Reed*, 489 U.S. 255, 261 (1989); *see also Ohio v. Robinette*, 519 U.S. 33, 37 (1996); *Pennsylvania v. Labron*, 518 U.S. 938, 941 (1996); *Arizona v. Evans*, 514 U.S. 1, 7 (1995); *Coleman*, 501 U.S. at 723; *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The rule applies both to substantive and procedural state laws. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985) (applying the *Long* "plain statement" rule to a procedural state law). Further, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Id.*

Here, with respect to petitioner's improper prosecutorial summation claim, the Appellate Division held that petitioner's "arguments regarding alleged prosecutorial misconduct during summation [were] unpreserved for appellate review, except for his argument relating to the statement by the prosecutor that the [petitioner] was 'capable of anything.' As to that single exception, the comment was within the bounds of permissible rhetorical comment and constituted fair comment on the evidence." *Grayson*, 35 A.D.3d at 882 (citations omitted).[4] To support this conclusion, the Appellate Division cited, *inter alia*, *People v. Tardbania*, in which the New York Court of Appeals similarly found an issue unpreserved where a defendant did not object to improper comments made by the prosecutor during summation. 528 N.E.2d 507, 507 (1988); *see also People v. Nuccie*, 441 N.E.2d 1111, 1111 (1982) (holding that a general objection made by defendant towards comments made by the prosecutor during summation was not preserved for review by the New York Court of Appeals). Thus, in disposing of petitioner's improper prosecutorial comment claim, the Appellate Division provided a plain statement that this claim was unpreserved for appellate review under established New York law. Therefore, this Court concludes that, except for the claim regarding the "capable of anything" comment, the claim is procedurally barred from federal habeas review.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-50 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases – for example, where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495 (1986). Here,

---

[4] Although the statement made by the prosecutor that petitioner was "capable of anything" is not procedurally barred, it is substantively without merit, as discussed *infra*, and thus not a basis for habeas relief.

6

petitioner has not provided a satisfactory explanation for his failure to raise the improper prosecutorial summation claim in state court, nor has he demonstrated prejudice resulting therefrom or a miscarriage of justice. The evidence presented at trial clearly established petitioner's guilt beyond a reasonable doubt. Accordingly, petitioner's claim is deemed to be exhausted, but is procedurally barred from review by this Court. In any event, the claim is without merit, as set forth *infra*.

### B. Review on the Merits

#### 1. Fourth Amendment Claim

Petitioner argues that he is entitled to habeas relief because the statements and physical evidence that flowed from his arrest should have been suppressed at trial because the police lacked probable cause to arrest him for homicide, burglary, and/or eavesdropping.[5] The Court disagrees. As set forth below, the Court cannot grant relief on this ground because the petitioner had a full and fair opportunity to litigate this Fourth Amendment claim in state court. In any event, even if the Court could review the underlying merits of this Fourth Amendment claim, petitioner's claim fails because petitioner has not demonstrated that the state court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence in the record.

---

[5] Although petitioner raises this claim as two separate grounds, the Court considers it as one issue – whether the police had probable cause to arrest petitioner.

It is well-settled that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Second Circuit has further explained that, under *Powell*, "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson,* 568 F.2d 830, 839 (2d Cir. 1977) (en banc)). Courts have viewed such a breakdown to occur when the state court "failed to conduct a reasoned method of inquiry into the relevant questions of fact and law." *Capellan,* 975 F.2d at 71 (citations and quotations omitted).

With respect to the existence of corrective procedures, it is clear that New York has adequate corrective procedures, which are set forth in New York Criminal Procedure Law § 710.10, *et seq.*, for litigating Fourth Amendment claims. *See, e.g.*, *Capellan,* 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989))). Moreover, in the instant case, there is absolutely no evidence of an unconscionable breakdown in the underlying process. To the contrary, after the petitioner filed his motion

to suppress, the court conducted a pre-trial evidentiary hearing. After the hearing, the court issued a written decision finding that the police had probable cause to arrest petitioner for murder and that the resulting evidence from his arrest would be admissible at trial. Following this decision, the prosecution moved the court to make additional findings of fact and conclusions of law to determine whether probable cause had existed to arrest petitioner for eavesdropping and burglary. The court granted the application and concluded that there was also probable cause to arrest petitioner for burglary and eavesropping. *People v. Grayson*, Ind. No. 268N/03, at 7 (Supreme Court, Nassau County, May 4, 2004); *People v. Grayson*, Ind. No. 2683N/03, Mot. Calendar Nos. C-245, C-241 (Supreme Court, Nassau County, July 21, 2004). In addition to the lower court proceedings, petitioner also raised his Fourth Amendment claims on appeal to the Appellate Division, which affirmed the lower court rulings. *Grayson*, 35 A.D.3d at 882 ("[T]he People established at the suppression hearing that the police had probable cause to arrest [defendant]."). Thus, the record reveals no "'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown," *Capellan*, 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)); rather, the record clearly establishes that the state court conducted a reasoned and thorough method of inquiry into the relevant facts. In short, having fully availed himself of New York's corrective procedures regarding his Fourth Amendment claim, petitioner has had an opportunity for full and fair litigation of the claim and may not raise it on federal habeas review. *See, e.g.*, *Garret v. Smith*, No. 05-CV-3374(JFB), 2006 WL 2265094, at *8 (E.D.N.Y. Aug. 8, 2006).

In any event, even if this Court could review this claim, the claim is without merit. The trial court and the Appellate Division decided this issue on the merits, and so AEDPA deference applies. In particular, the state court had more than sufficient basis to find probable cause to arrest for eavesdropping and burglary[6] based on: (1) the information provided by Catherine Harvey to the police, including her statement to police that petitioner had admitted to her that he had engaged in the eavesdropping in question,[7]

---

[6] Petitioner argues specifically that police arrested petitioner on the pretext of wanting to question him about the burglary and eavesdropping, but actually intended to interrogate him about the murder. (Petitioner's Mem. of Law in Supp. of Amended Pet. at 12-13.) The officers' subjective motivation for the arrest is irrelevant to the probable cause determination, *see Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)), and, in any event, the state court correctly found that there was probable cause to arrest both for murder and burglary/eavesdropping.

[7] Petitioner argues that some of the information provided by Catherine Harvey to the police was based on what her brother Merrick had told her about petitioner's eavesdropping. (*See* Petitioner's Mem. of Law in Support of Amended Pet. at 17-21.) Petitioner argues, therefore, that the police based their arrest on double hearsay from a source of unknown reliability (Merrick Harvey) in violation of the *Aguilar-Spinelli* rule. As a threshold matter, the Supreme Court has "abandoned the two-pronged Aguilar-Spinelli test for determining whether an informant's tip suffices to establish probable cause for the issuance of a warrant and substituted in its place a 'totality of the circumstances' approach.'" *United States v. Leon*, 468 U.S. 897, 904 n.5 (1984) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). In any event, the police received information directly from Catherine Harvey, who told police that she had spoken on the phone with petitioner, that she

and (2) Detective McHugh's observation of evidence at the crime scene, which corroborated the statements made by the Harveys.[8] In short, there is nothing in the record to indicate that the state court's ruling that the police had probable cause to arrest petitioner was contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court hearing.

Accordingly, even if this Court could review petitioner's Fourth Amendment claim on the merits, the Court concludes that the claim lacks merit.

2. Insufficient Evidence Claim

Petitioner claims that the evidence presented at trial was legally insufficient to prove his guilt as to the homicide conviction beyond a reasonable doubt, thus violating his Fourteenth Amendment right to due process of law.[9]

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus. *Eingaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

---

had confronted him about "always snooping," and that petitioner had admitted to the eavesdropping in question. (Hearing Tr. at 12-13.) The information provided by Catherine Harvey was thus sufficient to establish probable cause. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (internal citations, quotation marks, and alterations omitted)); *United States v. Harding*, 273 F. Supp. 2d 411, 418-19 (S.D.N.Y. 2003) ("Information provided by a crime victim or other citizen witness may be accepted even absent a proven track record of reliability or corroboration. In other words, the requirement of prior reliability or corroboration is addressed to the particular problem of professional informers." (citations and quotation marks omitted)); *see also United States v. Sultan*, 463 F.2d 1066, 1069 (2d Cir. 1972) (holding that probable cause existed when reliable informant reported an admission of criminal activity by defendant).

[8] For instance, police observed that the lock to Catherine Harvey's apartment had been changed, which was consistent with her statements to police about what she had told petitioner on the phone. (Hearing Tr. at 13.) Although the probable cause for eavesdropping and/or burglary was sufficient alone to provide a basis for the arrest and defeat petitioner's Fourth Amendment claim, the Court also concludes that the evidence provided probable cause to arrest petitioner for the murder.

[9] Although not listed as a ground for habeas relief, petitioner also includes in his initial petition an argument that the evidence presented at trial was legally insufficient to prove his guilt beyond a reasonable doubt regarding his burglary and eavesdropping convictions. (Pet. at 15.) Although this claim was not raised in state court, respondent does not argue that the claim is procedurally barred, and, in an abundance of caution, this Court will consider the claim. However, as discussed *infra*, this claim also lacks merit because the evidence against petitioner was overwhelming on the burglary and eavesdropping charges.

9

*Virginia*, 443 U.S. 307, 319 (1976); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind 'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotation omitted)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

In the instant case, petitioner argues that his convictions were not based on legally sufficient evidence. With respect to the murder conviction, the Appellate Division ruled on the merits that the evidence at petitioner's trial was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *Grayson*, 35 A.D.3d at 882. Therefore, AEDPA deference applies. As discussed below, there is no basis to disturb this state court ruling, and the Court concludes that petitioner's claim with respect to the sufficiency of the evidence is without merit.

At trial, the evidence connecting petitioner to the murder of Merrick Harvey included petitioner's prior intrusion into Merrick's house on the evening of the murder, petitioner's cell phone records placing him in the vicinity of the murder site at the time of the murder, and gun residue found on petitioner's steering wheel subsequent to the murder. As set forth below, reviewing the evidence in the light most favorable to the prosecution, the Court finds petitioner's claim to be without merit.

a. Prior Intrusion

At trial, Catherine Harvey testified that on the evening before Merrick Harvey was killed, Merrick caught petitioner intruding and eavesdropping on Catherine in the basement of the house. (Trial Tr. at 263-64.) In his statement given to the police, petitioner testified that while he was eavesdropping, he saw Merrick as well. (*Id.* at 726-27.) After being informed about petitioner's intrusion, Catherine called petitioner and told him she was seeking an order of protection against him. (*Id.* at 264-65.) Catherine then testified that petitioner cursed and hung up on her. (*Id.* at 263-65.) Less than two hours later, Merrick was shot dead in the same room in which petitioner was eavesdropping.

b. Phone Records

Catherine Harvey testified that she heard gunshots in her house at approximately 1:55 a.m. (*Id.* at 267.) After his arrest, petitioner stated he left Catherine's house after eavesdropping at 11:30 p.m. and went directly to his girlfriend Michelle Murray's house in

Queens where he spent the rest of the night (*Id.* at 738-41.) However, petitioner's cell phone records placed him in the vicinity of the murder scene when the murder occurred. (*Id.* at 599-606.) For instance, phone records indicate that at 12:37 a.m., 12:40 a.m., and 1:32 a.m., petitioner placed or received calls within the vicinity of the murder site. (*Id.* at 599-607.) At 2:12 a.m., petitioner placed a phone call from a location somewhere between the murder site and Murray's house in Queens. (*Id.* at 606-07.)

c. Gunpowder Residue

Approximately six hours after the murder, the Nassau County Police stopped petitioner and arrested him for burglary. The police testified that after they arrested petitioner, they removed the steering wheel from his car. (*Id.* at 424-25, 445.) Petitioner never claimed that anyone else drove the car on the night of the murder. (*Id.* at 735-40.) The police later testified that the steering wheel tested positive for gunpowder residue and that gunpowder residue does not remain long on any given object. (*Id.* at 443-49.) Nassau County detective Sergeant Robert Nemeth testified that the bullet that killed Merrick Harvey had been fired from a .38 revolver, which would cause gunpowder residue to land on the user's hand. (*Id.* at 688-89, 703-05.)

In sum, the evidence at trial in support of petitioner's murder conviction was overwhelming.[10] The evidence of petitioner's prior intrusion, his cell phone records placing him within the vicinity of the murder site when the murder took place, and the gunpowder residue found on his steering wheel was a sufficient basis for a rational jury to find petitioner guilty beyond a reasonable doubt. *See, e.g.*, *United States v. Workman*, 80 F.3d 688, 699-700 (2d Cir. 1996) (holding that evidence of second degree murder sufficient where petitioner had motive and circumstantial evidence was strong enough for rational juror to conclude guilt beyond a reasonable doubt). In short, in reviewing the evidence admitted at trial in the light most favorable to the prosecution, the Court concludes that a rational jury could fairly find that petitioner's guilt was established beyond a reasonable doubt. Thus, petitioner's claim for habeas relief on the grounds of sufficiency of the evidence is without merit.

3. The Evidentiary Ruling

Petitioner claims that he was denied a fair trial when the state court allowed evidence at trial of petitioner's prior bad acts. Specifically, petitioner contends that the trial court improperly allowed the prosecution to elicit evidence from the victim's sister about her relationship with petitioner, which included details of incidents of stalking, eavesdropping, and a veiled threat of physical harm. The Appellate Division ruled that "the testimony about [defendant's] prior bad acts was properly admitted as it tended to establish the defendant's motive to commit the crimes charged and to complete the narrative of events leading up to the murder." *Grayson*, 35 A.D.3d at 882. Therefore, AEDPA

---

[10] The evidence with respect to the burglary and eavesdropping convictions was also overwhelming. For instance, petitioner admitted to police that he had been "sneaking into the apartment, listening or trying to listen in on Catherine Harvey's telephone calls, trying to find out what her actions were." (Trial Tr. at 733.)

Thus, viewing the evidence in the light most favorable to the prosecution, the evidence at trial was legally sufficient to support petitioner's burglary and eavesdropping convictions.

deference applies. As set forth below, there is no basis to conclude that the trial court's evidentiary ruling was erroneous either under state or federal law and certainly no showing that the ruling, even if erroneous, rose to a constitutional level that deprived him of a fair trial. Thus, petitioner's claim does not warrant habeas relief.

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). *See generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (citations omitted). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived her of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant") (internal quotation marks omitted). Moreover, the court "must review the erroneously admitted evidence 'in light of the entire record before the jury.'" *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d at 181 (internal quotation marks omitted)). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001). As set forth below, the Court has reviewed the trial court's evidentiary ruling to which Grayson objects under this two-part test and concludes that petitioner's claim lacks merit.

As a threshold matter, there is no basis to conclude that the trial court's admission of the evidence regarding prior bad acts of the petitioner was erroneous under state law. As noted by the Appellate Division in affirming petitioner's conviction, appellate courts in New York have held that where evidence of defendant's prior bad acts help clarify the events that led to the killing and elucidate the motive for the crime, such evidence is admissible. *See Grayson*, 35 A.D.3d at 882 (citing, *inter alia*, *People v. Vega*, 23 A.D.3d 680, 681 (N.Y. App. Div. 2005)). *See generally People v. Molineux*, 168 N.Y. 264 (1901). Here, petitioner's victim was his ex-

12

girlfriend's brother. Therefore, the evidence of petitioner's prior bad acts toward his ex-girlfriend helped to clarify the events that led to the killing and to elucidate the motive for the crime. Accordingly, the trial court did not err in admitting such details of the petitioner's relationship with his ex-girlfriend.[11]

Finally, even if the admission of the evidence regarding prior bad acts of petitioner was erroneous under state law, there is no basis for the Court to conclude that the admission of those statements deprived petitioner of his constitutional right to a fair trial. The evidence of petitioner's guilt was overwhelming in this case based upon, among other things, the evidence discussed *supra* in connection with the sufficiency claim. Furthermore, the prior bad acts evidence constituted only a small part of the prosecution's case, which was comprised

---

[11] The state court's ruling on this evidence is also generally consistent with Rule 404(b) of the Federal Rules of Evidence, which provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Here, the state court's admission of the evidence regarding petitioner's prior bad acts toward his girlfriend – for purposes of explaining the events that led to the killing and establishing motive – was generally consistent with the federal rule. *See, e.g.*, *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) (admitting under Rule 404(b) in prosecution regarding the transmissions of threats, tape-recorded conversations between defendant and hospital director where former girlfriend worked to show, among other things, defendant's knowledge, intent, and plan to threaten, harass, and terrify former girlfriend); *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994) (admitting evidence of four previous assaults of victim under Rule 404(b) because "the charged and prior conduct were part of a pattern of abuse involving the same victim and . . . similar *modus operandi*"). Thus, the admission of such evidence would generally be allowed under federal law, with the requisite balancing under Rule 403 of the Federal Rules of Evidence. *See, e.g.*, *Feliciano v. Berbary*, No. 03 Civ. 4832 (NRB), 2003 WL 22832638, at *3 (S.D.N.Y. Nov. 25, 2003) ("We find no basis to quarrel with the Appellate Division's understanding of the trial court's decision, nor has petitioner demonstrated that such justifications for the admission of testimony concerning his uncharged crimes are contrary to principles of fundamental fairness. Quite the opposite, the evidence in question was admitted for reasons and under circumstances sufficiently consistent with the operative federal law."); *Alexander v. Walker*, No. 03 Civ. 8440 (NRB), 2004 WL 1857575, at *5 (S.D.N.Y. Aug. 19, 2004) ("This Court, in exercising habeas jurisdiction over state convictions, has held that, in cases where admitted evidence would have been in compliance with Fed.R.Evid. 404(b), there is no constitutional issue warranting habeas relief." (collecting cases)); *see also Toland v. Walsh*, No. 2-cv-0399 (GLS-VEB), 2008 WL 820184, at *13 (N.D.N.Y. Mar. 26, 2008) (Report and Recommendation adopted by District Court) ("The subject evidence would have been admissible under the Federal Rules of Evidence, which further suggests that the introduction of the evidence did not violate Petitioner's due process rights."); *Ford v. Crinder*, No. 97 Civ. 3031 (RMB)(JCF), 2001 WL 640807, at *5 (S.D.N.Y. June 8, 2001) ("Admission of evidence that satisfies [the Rule 404(b)] standard will not violate a criminal defendant's due process rights or provide the basis for habeas corpus relief."). Of course, even if the state court ruling would have violated Rule 404(b), the ultimate question is whether the error rose to a constitutional magnitude by depriving petitioner of a fundamentally fair trial. As discussed above, petitioner has not made such a showing, and the evidentiary claim is therefore without merit.

13

mostly of physical evidence, phone records and petitioner's admissions. In other words, in light of the entire record, there is nothing about the admission of this evidence, even if it were erroneous, that rendered petitioner's trial unfair.

In sum, the state court's ruling allowing the evidence as to prior bad acts was not contrary to, or an unreasonable application of, clearly established federal law. Thus, petitioner's request for a writ of habeas corpus based upon the state court's evidentiary ruling is denied.

4. Improper Summation Comments

Petitioner claims that the prosecutor's comments made during summation were improper and denied him a fair trial.[12] The Appellate Division ruled that the prosecutor's statement that petitioner was "capable of anything" was "within the bounds of permissible rhetorical comment and constituted fair comment on the evidence." *Grayson*, 35 A.D.3d at 882. The Court agrees. Moreover, as set forth below, none of the prosecutor's comments during the summation, either in isolation or cumulatively, was sufficiently egregious to warrant habeas relief.

For a claim of prosecutorial misconduct to establish a basis for habeas relief, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation and citation omitted). "There must, instead, be a showing that [petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Alexander v. Phillips*, 02 Civ. 8735(SAS)(FM), 2006 U.S. Dist. LEXIS 8926, *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)); *see also Dawkins v. Artuz*, 152, F. App'x 45, 46-47 (2d Cir. 2005) ("To warrant granting the writ, the prosecutorial misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Darden*, 477 U.S. at 181) (citations omitted)); *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). "To determine prejudice, the following factors must be considered '(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct.'" *Alexander*, 2006 U.S. Dist. LEXIS 8926, at *41 (quoting *Bentley*, 41 F.3d at 824) (citation omitted)). Moreover, "[w]hen analyzing the severity of alleged misconduct, the court examines the prosecutor's statements in the context of the entire trial." *Miller v. Barkley,* No. 03 Civ. 8580 (DLC), 2006 WL 298214, at *2 (S.D.N.Y. Feb. 8, 2006) (citation omitted).

Here, petitioner argues that comments made by the prosecutor during summation were improper and deprived him of a fair trial. For instance, petitioner specifically argues

---

[12] As noted *supra*, all of the claims for prosecutorial misconduct, other than the statement that the petitioner was "capable of anything," are procedurally barred. However, the Court has examined all of the grounds and statements relied upon in the petition for the prosecutorial misconduct claim and, for the reasons set forth below, denies this claim on the merits.

14

that the prosecutor's comments during summation – including identifying him as a man who was "capable of anything" and who was "devious," "deceitful," "cold," "calculating," "heartless," and "without a conscience" – denied him a fair trial. (*See* Trial Tr. at 970-71.) This Court, however, disagrees.

As the Second Circuit has noted, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995). Numerous courts have found that comments analogous to those which petitioner challenges are admissible commentaries on the evidence. *See, e.g.*, *Coble v. Quarterman,* 496 F.3d 430, 438 (5th Cir. 2007) (rejecting claim on habeas that trial counsel was ineffective for failing to object to prosecutor's comments during closing arguments describing petitioner as "a cold-blooded, merciless, remorseless killer"); *Pena v. Scott*, 33 F.3d 1378, No. 94-10140, 1994 WL 486961, at *5 (5th Cir. Aug. 10, 1994) (unpublished opinion) ("The prosecutor did refer to the killing as being cold-blooded and did say that Pena should not be allowed to 'roam the streets again, killing at random.' A prosecutor may make a metaphorical comment on the evidence."); *United States v. Pungitore*, 910 F.2d 1084, 1127 (3d Cir. 1990) (prosecutor's reference to defendant as a "cold-blooded murderer" and other defendants as "mob killers" were fair comments on the evidence adduced at trial); *United States v. Taxe*, 540 F.2d 961, 967-68 (9th Cir. 1976) (prosecutor's characterizations of defendant as a "scavenger," "parasite," "fraud," and "professional con-man," supported by evidence and not prejudicial); *Paul v. Kelly*, No. CV 90-1654 (RR), 1991 WL 49774, at *6 (E.D.N.Y. Mar. 26, 1991) ("The prosecutor's characterization of the criminal conduct engaged in as 'cold blooded,' was fair commentary on the evidence adduced.").

In any event, even assuming *arguendo* that these or other comments by the prosecutor in summation were improper, they were not severe or egregious and certainly did not render the trial so unfair as to deprive petitioner of his due process rights. Within the lengthy summation that involved an analysis of the trial evidence, the challenged comments did not play a substantial role in the summation, much less the entirety of the trial. *Miller*, 2006 WL 298214, at *3 ("The prosecutor's statements were brief and not a significant part of the State's argument or summation."). Taken as a whole, the summation properly focused the jury on the evidence, and the use of these or other colorful adjectives and phrases by the prosecutor did not render the trial fundamentally unfair. Moreover, given the overwhelming evidence of guilt, as discussed *infra*, even if the comments were improper, they would not warrant habeas relief because they clearly did not have a substantial or injurious effect or influence on the jury's verdict. *See, e.g.*, *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000) ("Although this court does not condone prosecutorial remarks encouraging the jury to allow sympathy to influence its decision, it is likely the nature of the crime itself produced sympathy before the prosecutor made any comments. . . . The prosecutor's appeals to emotion were not sufficient to render the trial fundamentally unfair."); *Gilchrist* v. *Hagan*, C/A No. 6:06-1236-MBS, 2007 WL 951749, at *27 (D.S.C. Mar. 27, 2007) (Report & Recommendation adopted by District Court) ("[T]he prosecutor's comments that the petitioner had just killed 'a defenseless man, and he had to come up with some alternative version of

reality,' as well as the reference to the petitioner having 'nine hours between cold-bloodedly killing this man here and turning himself in . . . to create the fiction you all heard from him yesterday,' . . . were merely an appropriate argument that the petitioner was guilty of murder and his testimony . . . , as well as that of his other witnesses, was not credible") (citations omitted); *see also United States v. Wiley*, 29 F.3d 345, 351 (8th Cir. 1994) ("We conclude that the prosecutor's characterization of [the defendant] as a 'criminal' and 'drug dealer,' although arguably improper, did not deprive [the defendant] of a fair trial." (collecting cases)); *Corbett v. Mintzes*, No. 84-1021, 1985 WL 13562 (6th Cir. Aug. 7, 1985) ("The statements that [petitioner] was a mean, vindictive, col[d]-blooded person and that he was looking for an excuse to attack [the victim] while possibly improper were not so egregious to constitute a deprivation of [petitioner's] right to due process. We therefore find that the comments do not warrant habeas relief."); *Toro v. Herbert*, Nos. 01-CV-3386 (JBW), 03-MISC-0066 (JBW), 2003 WL 22992059, at *6 (E.D.N.Y. Sept. 29, 2003) (where prosecutor, among other things, referred to defendant as a cold-blooded murderer during summation, "none of the prosecutor's remarks was sufficiently egregious – whether in isolation or when accumulated – to have denied petitioner a fair trial").

In short, the statements cited by petitioner from the prosecutor's summation did not deprive petitioner of a fair trial. The Appellate Division's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and petitioner's claim lacks merit. Accordingly, petitioner's request for a writ of habeas corpus on this ground is denied on the merits.

\*\*\*

In sum, having carefully examined the merits of all of petitioner's claims, the Court concludes that petitioner has failed to demonstrate that any state court ruling was contrary to, or was an unreasonable application of, clearly established federal law, or that any state court decision was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In short, the Court concludes that none of petitioner's claims have merit.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: February 1, 2010
Central Islip, New York

Attorney for petitioner is Stephen Neil Dratch, Franzblau Dratch, P.C., 233 Broadway, Suite 2701, New York, NY 10279. Attorney for respondent is Kathleen M. Rice, District Attorney, Nassau County, 262 Old County Rd., Mineola, NY 11501, by Andrea M. DiGregorio and Jason P. Weinstein, Assistant District Attorneys.